IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 15-cv-00686 |
| v. | ) ) | Judge Virginia M. Kendall |
| BERKSHIRE REFRIGERATED WAREHOUSING, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This dispute arises from Plaintiff Cincinnati Insurance Company's desire for a declaration that it has no duty to defend or indemnify Defendant Berkshire Refrigerated Warehousing, LLC in another lawsuit in which Berkshire has been sued for the theft of equipment lodged in its storage facility. Cincinnati seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 1332 that the insurance policy that it issued to Berkshire does not cover the stolen equipment. Cincinnati's Complaint submits three claims for a declaratory judgment establishing that it has no duty to defend, reimburse, indemnify, or otherwise pay Berkshire for loss incurred as a result of the Underlying Action. In support of its claims, Cincinnati asserts that it has no duty to defend or indemnify because the location of the stored equipment was not covered by the insurance policy and the policy's "care, custody, or control" exclusion from coverage applies. Berkshire moves to dismiss all of Cincinnati's complaints under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The

Court denies Berkshire's motion to dismiss Cincinnati's Complaint because it states a claim for declaratory judgment and is not premature.

## BACKGROUND

Berkshire is an Illinois corporation "engaged in the business of warehousing and refrigerated storage." (Dkt. No. 21 at 21.) Cincinnati issued an insurance policy to Berkshire effective from December 15, 2011 to December 15, 2012 ("Policy"). *Id.* at 4. The Policy contained a number of coverage parts including a Property Coverage Part, a Commercial General Liability Part, and an Umbrella Coverage Part. *Id.* at 5. The Property Coverage Part covers "physical loss or damage to covered property at covered locations caused by a covered peril." *Id.* Protection under the Property Coverage Part extends to personal property of others in Berkshire's "care, custody, or control" at "covered locations or in the open (or in vehicles) on or within 1000 feet of covered location." *Id.* The Commercial General Liability Part provides that Cincinnati "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies." *Id.* at 7. It provides that Cincinnati "will have no duty to defend the insured against any suit seeking damages . . . to which this insurance does not apply." *Id.* at 7. The Commercial General Liability Part also states that it does not apply to property damage, including loss, to "[p]ersonal property in the care, custody, or control on [sic] an insured." *Id.* The Umbrella Coverage Part of the policy provides that Cincinnati will cover losses which the insured is legally obligated to pay for property damage, including loss that the insurance covers that is in excess of the "underlying insurance." *Id.* at 8–9. The Umbrella Coverage Part does not apply to "personal property notowned by an insured and in the care custody, or control of an insured[.]" *Id.* at 9.

2

On July 9, 2014, Charter Oak filed as subrogee of Gold Standard suit against Berkshire in this district. *Id.* at 2; *Charter Oak Fire Ins. Co. a/s/o Gold Standard Baking, Inc. v. Berkshire Refrigerated Warehousing, LLC*, No. 1:14-cv-05201 (N.D. Ill. filed July 9, 2010). In its Underlying Complaint, Charter Oak states that it issued an insurance policy to Gold Standard Baking which provided commercial insurance coverage for property damage and/or loss. *Id.* The Underlying Complaint alleges that Berkshire and Gold Standard reached an agreement by which Berkshire would Gold Standard's equipment ("Equipment") in Berkshire's trailers. *Id.* at 2-3. The Equipment was initially stored at 4550 S. Packers Avenue in Chicago, a "covered location" under the Policy, and then moved to 1250 W. 42nd Street in Chicago. *Id.* at 3. In its Complaint, Cincinnati alleges that 1250 W. 42nd Street is neither a "covered location" nor within 1,000 feet of a "covered location," as required for coverage by the Property Coverage Part. *Id.* at 6. The Underlying Complaint alleges that "Berkshire accepted custody and control of the subject goods in exchange for the required payments." *Id.* at 8.

On or about January 18, 2012, the trailers with the Equipment were stolen from 1250 W. 42nd St. and have not been recovered. *Id.* at 3. In its Complaint, Cincinnati alleges that "Berkshire had care, custody and control of Gold Standard's equipment when the equipment went missing or was stolen was stolen." *Id.* at 8. Cincinnati seeks declaratory judgment on three counts. Count I asks the Court to find that Cincinnati has no obligation to defend, reimburse, or indemnify Berkshire under the Property Coverage Part because the Equipment was not within 1,000 feet of a covered location. *Id.* at 4-6. Counts II and III seek judgment that Cincinnati has no duty to defend, reimburse, indemnify, or otherwise pay Berkshire under the Commercial General Liability and Umbrella Coverage Parts because the Equipment was under Berkshire's care, custody and control when it was stolen. *Id*. at 7-10.

**LEGAL STANDARD**

On a Rule 12(b)(6) motion to dismiss, the Court construes the Complaint in the light most favorable to the non-moving party, "accepting as true all well-pleaded facts as alleged, and drawing all possible inferences in [the non-movant's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). A motion to dismiss shall be granted if "allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the Complaint and construes all reasonable inferences in favor of the plaintiff. *See Tamayo,* 526 F.3d at 1081. The Court considers at this stage exhibits attached to the Complaint as part of the pleadings, such as in this case Charter Oak's Underlying Complaint attached to Cincinnati's Complaint. *See Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

**DISCUSSION**

**I.     At Issue Is the Sufficiency of Cincinnati's Complaint, Not Its Merits**

Berkshire argues that Counts II and III of Cincinnati's Complaint should be dismissed under Rule 12(b)(6) because the Underlying Complaint does not allege sufficient facts to show that the "care, custody or control" exclusion in the Commercial General Liability and Umbrella Parts applies. (Dkt. No. 30 at 6.) Under Illinois law, Courts apply a two-pronged test to determine whether an insurance policy's "care, custody or control" exclusion applies. *See Bolanowski v. McKinney,* 581 N.E.2d 345, 348 (Ill. App. Ct. 1991). First, the Court considers whether the property at issue was within the possessory control of the insured at the time of the loss. *Id.* For this prong, "the control exercised by the insured must be exclusive, it need not be continuous, and if the insured has possessory control at the time the property is damaged, the

4

exclusion clause will apply." *Country Mut. Ins. Co. v. Waldman Mercantile Co., Inc.*, 430 N.E.2d 606, 609 (Ill. App. Ct. 1981). To satisfy the second prong, the property must be "a necessary element of the work" performed by the insured. *Bolanowski*, 581 N.E.2d at 348. Berkshire asserts that the Underlying Complaint fails to sufficient allege facts to plausibly establish that Berkshire had possessory control over the Equipment as required by the first prong because it did not allege that Berkshire had exclusive or primary control over it at the time it was stolen. (Dkt. No. 30 at 8.) With respect to the second prong, Berkshire argues the Underlying Complaint does not contain factual allegations stating a claim that the Equipment was necessary to Berkshire's work because it provides no description of the Equipment or explanation of Berkshire's possession of the Equipment. *Id.* at 9-10. Further, Berkshire proposes that Cincinnati has failed to allege facts to support its declaratory judgment action because its request for a declaration that it has no duty to indemnify Berkshire is premature. *Id.* at 10.

Cincinnati counters by pointing to the procedural posture, suggesting that the "sole question before the Court is whether Cincinnati's allegations, when accepted as true and construed favorably in Cincinnati's favor, plausibly suggest that it has a meritorious declaratory judgment claim." (Dkt. No. 34 at 4.) Cincinnati accordingly argues that its Complaint states a claim for declaratory judgment because the Underlying Complaint alleges sufficient facts to make it plausible that the "care, custody, or control" exclusion applies. *Id.* Cincinnati objects to Berkshire's attempt to dive into the merits of the case—namely whether the "care, custody, or control" exclusion in fact applies and absolves Cincinnati of a duty to defend—because at the motion to dismiss phase, the issue is the sufficiency of the claim and not its merits. *Id.* at 5.

In considering a motion to dismiss, the question before the Court is the sufficiency of the allegations when drawing inferences in favor of the non-moving party and not whether the non-moving party will in fact succeed in her cause of action. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). As such, where a party seeks to dismiss under Rule 12(b)(6) an insurer's complaint seeking a declaration that it has no duty to defend, the Court reads the complaint in favor of the non-moving party—the insurer—and then decides if on its face, it plausibly states a claim for relief. *See, e.g., Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 67 F.Supp.3d 898, 900 (N.D. Ill. 2014); *Cincinnati Ins. Co. v. Ameren Services Co.*, Case No. 14—CV—355—SMY—PMF, 2014 WL 6819498 at *1 (S.D. Ill. Dec. 2, 2014). It is therefore premature to consider at this stage to analyze whether to grant Cincinnati declaratory judgment or to determine if Cincinnati has a duty to defend Berkshire in the underlying action because those are questions of merit. Instead, the Court's task is to measure the sufficiency of the Complaint. *See, e.g., id.*

In support of its motion, Berkshire refers to a series of cases where insurers sought declarations that they owed no duty to defend policyholders in underlying lawsuits. (Dkt. No. 30 at 6-10.) These cases posit that the Underlying Complaint should be read in favor of the insured. The cases, however, do not address a 12(b)(6) motion to dismiss and thus are inapposite. *See Bolanowski*, 581 N.E.2d 345 (motion for summary judgment); *United States Fid. & Guar. Co. v. Wilkin Insulation Co.,* 578 N.E.2d 926 (Ill. 1991) (motions for summary judgment).

## II. Cincinnati's Complaint States a Claim for Relief

Berkshire moves to dismiss all three counts in Cincinnati's Complaint under 12(b)(6). (Dkt. No. 30 at 1.) Because the Complaint when viewed in the light most favorable to Cincinnati states a claim for declaratory judgment, the Court denies Berkshire's motion to dismiss. Count I

of the Complaint alleges that Cincinnati has no duty to defend Berkshire in the Underlying Action because the lost property does not fall under the Property Coverage Part. (Dkt. No. 21 at 4-6.) The Property Coverage Part establishes that the Policy applies only to property within 1,000 feet of a "covered location." The Complaint alleges that the Equipment was more than 1,000 feet from a "covered location" when it was lost; an allegation that the Court accepts as true because it is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Count I therefore states a claim for declaratory judgment that Cincinnati has no duty to defend because it contains sufficient factual allegations that the Equipment was not covered pursuant to the Property Coverage Part.

Counts II claims that Cincinnati has no duty to defend Berkshire because the "care, custody, and control" exclusion in the Commercial General Liability Part applies. (Dkt. No. 21 at 7-8.) Similarly, Count III claims that Cincinnati has no duty to defend because the "care, custody, and control" exclusion in the Umbrella Part applies. *Id.* at 8-10. Berkshire contends that the underlying complaint lacks sufficient facts to support the conclusion that the Policy's "care, custody or control" exclusion applies. The Underlying Complaint states that Berkshire is "engaged in the business of warehousing and refrigerated storage, including commercial property insurance coverage." (Dkt. No. 30 at 21.) It alleges that Gold Standard "entered into an agreement with Berkshire for the storage of equipment owned by Gold in trailers provided by Berkshire at a location provided by Berkshire in exchange for a monthly fee." *Id.* The Underlying Complaint further alleges that "Berkshire accepted custody and control" of the Equipment in fulfillment of their storage agreement. *Id.* at 4. In addition, it states that Berkshire "fail[ed] to use reasonable care in storing the trailers containing Gold's goods at its premises." *Id.* at 5.

7

The Underlying Complaint's factual allegations plausibly prove that the Equipment was in Berkshire's care, custody, or control according to Illinois law. By alleging that Berkshire was storing the Equipment at one of its locations and that the Equipment was stolen while in storage at Berkshire, it is reasonable to infer that Berkshire had exclusive possessory control over the Equipment at the time it was stolen. There are sufficient facts therefore to satisfy the first prong of the "care, custody, or control" test. Moreover, with respect to the second prong, it is plausible that the Equipment was necessary for Berkshire's work. The fact that Berkshire is engaged in the business of storage and took possession of the goods through a contractual agreement with Gold Standard raises the possibility that the Equipment was necessary to Berkshire's work as a storage business above the level of mere speculation. As a company in the business of storing property, it is plausible that storing the Equipment pursuant to its agreement with Gold was necessary to Berkshire's work. *See, e.g., Essex Inc. Co. v. Soy City Sock Co.,* 503 F.Supp.2d 1068, 1076 (C.D. Ill. 2007) (granting summary judgment in favor of insurer because warehousing company stored, packed, and had possessory control over stored property at the time of the loss). As such, the Underlying Complaint states a claim for a declaratory judgment establishing that Cincinnati has no duty to defend Berkshire in the underlying action because both prongs of "care, custody, or control" exclusion are satisfied. The Court therefore dismisses Berkshire's motion to dismiss all counts.

## III. Cincinnati's Duty to Indemnify Claim Is Not Premature

Cincinnati's Complaint seeks a declaration that it has no duty to indemnify Berkshire for any loss incurred as a result of the liability in the underlying action. (Dk. No. 21 at 1.) Berkshire asks the Court to dismiss Cincinnati's Complaint because Cincinnati's request for a declaration on its duty to indemnify is premature. (Dkt. No. 30 at 10.) Berkshire argues that the question of

Cincinnati's duty to indemnify cannot stand alone because it has failed to pled sufficient facts to support its duty to defend claims. *Id.* at 10-11. But because Cincinnati has stated a claim for no duty to defend, as discussed earlier, its request for a declaration that it has no duty to indemnify Berkshire is ripe.

The duty to defend is broader than the duty to indemnify, and where there is no duty to defend, a duty to indemnify cannot arise. *See United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d 334, 338 (7th Cir. 1992). In general, a determination of an insurer's duty to indemnify must follow a determination of the insured's underlying liability. *See U.S. Fid. & Guar. Co.*, 578 N.E.2d at 930. But where an insurer seeks a declaration that it has no duty to defend and no duty to indemnify, the claim regarding its duty to indemnify is not premature because its issues overlap with whether it has a duty to defend. *See, e.g., Atlantic Casualty Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F.Supp.3d 953, 961 (N.D. Ill. 2014). Specifically, in order to prove that it has no duty to defend, the insurer must establish that there is no potential that the underlying lawsuit will result in holding it liable for coverage pursuant to the insurance policy. *See Pekins Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018 (Ill. 2010) ("If the complaint alleges facts which bring the claim within the potential indemnity coverage of the policy, the insurer is obligated to defend the action."). So if Cincinnati successfully proves that it will not be liable in the Underlying Action, it will have conclusively established that it has no duty to indemnify Berkshire. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (Ill. 1993) ("[W]here no duty to defend exists and the facts alleged do not even fall *potentially* within the insurance coverage, such facts alleged could obviously never *actually* fall within the scope of coverage. Under no scenario could a duty to indemnify arise."). Consequently, if the Court concludes that there is no duty to defend, it can immediately address

the question of an insurer's duty to indemnify even if the underlying liability of the insured remains unresolved. *See, e.g., Westfield,* 67 F.Supp.3d at 902 ("Once the duty to defend issue is resolved in the instant action, the court will address the duty to indemnify."); *Atlantic*, 73 F.Supp.3d at 961; *Cincinnati Ins. Co.*, 2014 WL 6819498 at *2 (finding the issue of insurer's duty to indemnify was not premature when insurer sought declaratory judgment on duty to defend); *Cincinnati Ins. Co. v. McLean*, No. 08—CV—2205, 2009 WL 722480 at *1 (C.D. Ill. Mar. 18, 2009) (denying insured's motion to dismiss concerning duty to indemnify because it would "bifurcate the case when only one determination may be needed."). Here, a determination regarding Cincinnati's duty to defend has not yet been made, but this does not mean that Cincinnati's claim for no duty to indemnify is premature because if the Court finds that Cincinnati has no duty to defend, it can accordingly find that it has no duty to indemnify either. As a result, the Court denies Berkshire's motion to dismiss Cincinnati's declaratory judgment claims regarding the duty to indemnify.

## CONCLUSION

For the reasons stated above, Berkshire's motion to dismiss all counts of Cincinnati's Complaint is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 12.3.2915

10